# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ARIEN JAMES DUNBAR,**
      Plaintiff,

v.                                                                         Case No. 18-C-665

**BETH EDGE, T. WEST,**
**DR. SYED, CYNTHIA GRIFFIN,**
**SANDRA MCARDLE, K. MILLER,**
**JOLINDA WATERMAN,**
**GARY BOUGHTON, CATHY JESS,**
**JIM SCHWOCHERT,**
**BUREAU OF HEALTH SERVICES,**
**WISCONSIN PATIENTS COMPENSATION FUND,**
**and WISCONSIN BOARD OF NURSING,**
      Defendants.

## ORDER

Plaintiff Arien Dunbar, who is representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that defendants violated his civil rights. This case was originally assigned to U.S. Magistrate Judge William Duffin; however, because not all parties have had the opportunity to consent to magistrate judge jurisdiction, the case was reassigned to a U.S. District Court judge for screening of the complaint.

The Prison Litigation Reform Act applies to this case because plaintiff was incarcerated when he filed his complaint. 28 U.S.C. § 1915. That law allows an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. § 1915(b). On May 2, 2018, Judge Duffin ordered plaintiff to pay an initial partial filing fee of $11.08. Plaintiff paid the fee on June 4, 2018. Accordingly, I will grant plaintiff's motion to proceed without prepayment of the filing fee.

Since filing his complaint, plaintiff has been released from prison. Plaintiff must still pay the remainder of the filing fee. He may do so over time, as he is able.

*Federal Screening Standard*

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that 1) he was deprived of a right secured by the Constitution or laws of the United States, and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

*The Complaint's Allegations*

Plaintiff's complaint, which contains more than 250 numbered paragraphs, includes a significant number of allegations against individuals who he has not named as defendants. Even if he had named those individuals as defendants, none of the allegations against them give rise to a claim under the Constitution. As such, I will address only those allegations that are relevant to the claims he seeks to state against the named defendants.

The events alleged in plaintiff's complaint occurred while he was incarcerated at Wisconsin Secure Program Facility (WSPF). Prior to arriving at WSPF, plaintiff had been examined by nurses at Jackson Correctional Institution in response to his complaints about a rash that had developed on the back of his neck and that had begun to spread to his face, shoulders, and chest. The nurses prescribed Triamcinolone cream (used to reduce swelling, itching, and redness that can occur with a variety of skin conditions, including eczema) and Dermarest lotion (a hydrocortisone and zinc complex used to relieve symptoms associated with eczema). *See* https://www.webmd.com/drugs/2/drug-1456/triamcinolone-acetonide-topical/details and http://www.dermarest.com/product-information/eczema-medicated-lotion (last visited June 21, 2018).

Plaintiff explains that, after arriving at WSPF, the rash continued to worsen and spread. On April 7, 2017, plaintiff contacted health services about the rash. He was seen the next day by defendant nurse Beth Edge. She diagnosed plaintiff with "altered skin integrity" and prescribed Dermarest lotion. (ECF No. 1 at ¶ 28-34.) The next day,

3

plaintiff was again seen in health services and an appointment was scheduled for plaintiff to see an off-site Advanced Care provider.

Plaintiff alleges that his condition continued to deteriorate. About a month later, on May 9, 2016, plaintiff was seen by defendant Dr. Syed, who examined the rash and prescribed Triamcinolone cream. Plaintiff complained several times to health services that the Triamcinolone cream Dr. Syed prescribed was not the same Triamcinolone cream that the nurse at his previous institution had prescribed.

A couple of weeks later, on May 23, 2016, plaintiff had a Telemed visit with defendant APNP Cynthia Griffin, who was an off-site specialist. She asked him about his condition, but because it was a Telemed visit, she did not examine the rash in person. Griffin renewed Dr. Syed's prescription for Triamcinolone cream.

Plaintiff alleges that his condition continued to worsen. About sixteen months after his Telemed visit with Griffin, on September 18, 2017, plaintiff reviewed his medical file in an attempt to discover the medication that health services at his previous institution had prescribed. He alleges that he noticed the medication Miconazole Nitrate cream (used to treat fungal skin infections) mentioned on a form dated October 7, 2015. *See* https://www.webmd.com/drugs/2/drug-3841-787/miconazole-nitrate-topical/miconazole-topical/details (last visited June 21, 2018).

That same day, plaintiff contacted health services and asked about the medication. The next day, defendant Sandra McArdle responded in writing. She noted that she did not see a prescription order from that date, nor were there any provider notes from that date. Nonetheless, she stated that she would order the medication. She

4

did not examine plaintiff in person, nor did she ask him if he had any allergies to medications.

On October 3, 2017, plaintiff received the Miconazole Nitrate cream. A week later, he contacted health services and informed staff it was not the same medication he had received at his previous institution. He said he could tell because the packaging was different. The next day, on October 11, 2017, defendant ACP K. Miller responded to plaintiff and recommended that he try Menphor skin cream (used to relieve pain and itching associated with minor skin irritations). *See* https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=1294e5d7-7208-4312-bcc7-e0c093309559 (last visited June 21, 2018). Miller requested the Menphor prescription the next day. She did not address his comment that the Miconazole Nitrate cream was different from what he had been using at his previous institution.

On October 14, 2017, plaintiff used the Miconazole Nitrate cream, despite having complained that it was the wrong medication. He alleges that he suffered an allergic reaction (swelling, discoloration, hyperpigmentation, redness, itchiness) and notified health services.

The next day, defendant nurse B. Edge responded to plaintiff in writing. She provided him with the Menphor and stated that he already had a prescription for Dermarest. She did not address the issue of his allergic reaction to the Miconazole Nitrate cream. Plaintiff alleges that he wrote to health services several times about the allergic reaction.

On October 24, 2017, nurse R. Tracy (who is not defendant) responded to plaintiff and told him that she had tried to get him to come down to health services. She

instructed him to sign a refusal form if he was in fact refusing treatment. Plaintiff did not sign the form.

On November 1, 2017, plaintiff contacted defendant warden Gary Boughton asking about the procedures for medical care. Boughton responded the next day and directed him to defendant health services manager Jolinda Waterman. He then contacted Waterman about the different kinds of Miconazole cream. That same day, on November 2, 2017, health services provided him with information about the different types of Miconazole cream as well as educational information regarding its uses and symptoms of allergic reactions.

A few days later, on November 5, 2017, plaintiff contacted Waterman again and asked for information about the different kinds of Menphor skin cream. That same day, nurse Kramer (who is not a defendant) responded that she knows about only one kind of Menphor, or at least, WSPF provides only one kind.

On November 9, 2017, plaintiff contacted Boughton about health services' failure to address his allergic reaction. Plaintiff was seen by health services the next day. Defendant T. West talked to plaintiff about his allergic reaction and told him to stop using the Menphor lotion. A couple of days later, Boughton responded to plaintiff and told him he had spoken with Waterman, who told Boughton that plaintiff had already been seen in health services.

Less than a week later, on November 14, 2017, plaintiff was seen by McArdle. She performed an examination and diagnosed an allergic reaction to the Miconazole Nitrate cream. McArdle crossed out NKDA (no known diagnosed allergies) on plaintiff's medical forms and inserted Miconazole. She then prescribed Hydrocortisone (used to

6

treat a variety of skin conditions, including rash and eczema) and Clotrimazole (used to treat fungal infections). *See* https://www.webmd.com/drugs/2/drug-148380/anti-itch-hydrocortisone-topical/details and https://www.webmd.com/drugs/2/drug-4316/clotrimazole-topical/details (last visited June 21, 2018). McArdle also scheduled plaintiff to see an offsite dermatologist.

Beginning the next day, plaintiff began to contact health services about the prescribed medications and the referral to a dermatologist. On November 28, 2017, a nurse (who is not a defendant) responded that health services was checking on the prescriptions and that an appointment with a dermatologist had been scheduled. Plaintiff received the medication later that day.

On December 16, 2017, plaintiff contacted Waterman and asked for information about the different kinds of Clotrimazole and Hydrocortisone creams and about the symptoms of an allergic reaction. He also informed her that the medications were not working. Waterman responded the next day and gave him the requested information.

On December 18, 2017, plaintiff contacted Waterman and asked about the Department of Adult Institutions (DAI) policy that determined whether and when inmates with medical needs should be seen in person and how health services evaluates the severity of an inmate's condition. That same day, McArdle contacted plaintiff and told him he had an appointment scheduled with a dermatologist in less than a month. Three days later, Boughton contacted plaintiff and gave him information about DAI policies and how health services assesses inmates' requests for medical treatment. Waterman also responded to plaintiff's questions about DAI policies on December 28, 2017.

On January 18, 2018, plaintiff was examined by Dr. Yao (who is not a defendant), an off-site dermatologist. He diagnosed plaintiff with eczema/dry skin. He prescribed Triamcinolone cream, Hydrocortisone cream, Diphenhydroxyzine, and gentle skin care. He also gave plaintiff samples of Sarna and Aveeno eczema creams. Health services ordered Triamcinolone cream and Diphenhydroxyzine the next day.

About ten days later, on January 28, 2018, plaintiff contacted health services complaining that the Triamcinolone cream he received was the same as what he had received before and that it was ineffective. He also complained that he had not received the other medications prescribed by Dr. Yao. Two days later, a nurse who is not a defendant responded that she did not see a prescription for the medication he was requesting. McArdle also responded and stated that she too did not see a prescription for the requested medication. She told plaintiff to let her know if he wanted to try a different medication.

On February 20, 2018, he complained to health services that the Triamcinolone cream was still not working. He also asked for more Aveeno skin cream, which Dr. Yao had given him a sample of. The next day, McArdle responded that Aveeno is not available but she would order Eucerin skin cream for him.

In March 2018, plaintiff, after reviewing his medical file, asked why his records no longer indicated an allergy to Miconazole. McArdle responded and explained to him that she had to take that off as an allergy in order to get the pharmacy to give him another medication that had been prescribed to him.

Plaintiff was released from custody on May 1, 2018.

8

*Analysis*

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). *Id*.

Plaintiff alleges that he suffers from a chronic, itchy and painful rash (most likely eczema) and that he had an allergic reaction to a topical cream that resulted in swelling, discoloration, hyperpigmentation, redness, and itchiness. While these allegations satisfy the objective element of the deliberate indifference standard, I find that they do not give rise to a reasonable inference that any of the defendants acted with a sufficiently culpable state of mind.

Plaintiff's allegations show that health services nurses (Edge, McArdle, Miller, and West) promptly responded to plaintiff's complaints about his condition. Often, he received a written response the day after he submitted a health services request and, when deemed necessary, he was physically examined. Further, they either changed plaintiff's prescribed creams and lotions in response to his complaints that what he was using was not working or they scheduled appointments with off-site specialists. This conduct does not demonstrate deliberate indifference.

More specifically, plaintiff alleges that McArdle showed deliberate indifference when she decided to give him Miconazole Nitrate cream without examining him and without any indication that it had been previously prescribed. I do not agree with plaintiff's conclusion. Plaintiff's skin condition was well documented in his medical records; without an indication that his condition had changed, there was no need for her to physically examine him. Plaintiff asked for a different medicated cream to treat his condition, so McArdle, who had access to plaintiff's medical records, decided to prescribe an antifungal cream. Her willingness to try new medications to address plaintiff's condition is the opposite of deliberate indifference.

Plaintiff also highlights that she did not ask him whether he had any allergies, but the fact that plaintiff had no known allegories at that time was documented in his medical file. Further, plaintiff fails to state a failure to warn claim because he has not alleged that his risk of developing an allergic reaction was substantial enough that a reasonable patient would have expected to have been apprised of the potential side effects, nor does he allege that McArdle knew the risk of his having an allergic reaction to be substantial. *See Phillips v. Wexford Health Sources, Inc.*, 522 Fed.Appx. 364, 367 (7th Cir. 2013).

Plaintiff also alleges that Edge ignored his notice to health services that he was having an allergic reaction to the Miconazole Nitrate cream. Putting aside the fact that he chose to use the Miconazole Nitrate cream *after* he complained to health services that it was not the right medicated lotion, his allegations do not support his conclusion that Edge ignored his complaints. Plaintiff explains that, after using Miconazole Nitrate cream he experienced red, swollen, itchy and somewhat discolored skin. While irritating,

10

these symptoms are not so severe that an immediate examination was required. Edge responded in writing to plaintiff's written request the day after he wrote to health services and gave him the previously prescribed Manphor, a lotion used to relieve pain and itching—two of the symptoms he indicated he was experiencing as a result of his allergic reaction.

In addition, plaintiff alleges that a little more than a week later, a non-defendant nurse contacted him and told him that she had been trying to get him to come down to health services and, if he was refusing treatment he needed to sign the enclosed refusal form. Although he did not sign the form, the mere fact that medical staff had been unsuccessfully trying to get him to come to health services for an examination, undermines his assertion that his complaints of an allergic reaction were ignored.

Plaintiff also complains about the amount of time between him being referred to an off-site specialist and him being seen by that specialist. Plaintiff's allegations indicate that the nurses promptly (within days) attempted to schedule appointments with off-site providers. That is all they could do. They do not have control over the openings in an off-site provider's schedule, so they are not personally responsible for the lag between setting the appointment and the actual appointment. In any event, plaintiff's condition, while uncomfortable, was not so serious that it required an immediate appointment, nor does plaintiff allege that it worsened as a result of the delay.

Similarly, plaintiff's allegations fail to state a claim for deliberate indifference against Waterman, the health services supervisor, and Boughton, the warden. According to plaintiff, both of these defendants were very responsive to his requests for information, often responding on the same day or the day after he would submit a

request. In addition, on those occasions when Boughton did not have the information he needed to address plaintiff's requests, he would either direct plaintiff to Waterman or would get the information from Waterman and then respond directly to plaintiff. Their responsiveness does not support a claim for deliberate indifference.

Plaintiff also fails to state a claim against Dr. Syed and Griffin. Plaintiff complains that they both prescribed the "wrong" Triamcinolone cream. By "wrong" plaintiff means that it was not the same Triamcinolone cream that he had been prescribed while at his previous institution. Syed and Griffin, however, were not bound by what others had previously prescribed. They both exercised their medical judgment and prescribed the medicated cream they thought best to address plaintiff condition. Plaintiff's disagreement with their decisions is insufficient to state a claim. *See Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005) ("[N]either medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference.").

Plaintiff also complains that because his visit with Griffin was a Telemed visit, she did not examine him in person. The Constitution does not require that all medical examinations be in person. Griffin was able to consult with plaintiff and ask him and the nurse who was present questions about his condition. Griffin prescribed plaintiff a medicated cream to address his condition. These allegations do not give rise to a deliberate indifference claim.

Plaintiff also sues Waterman, Boughton, the Wisconsin Board of Nursing, the Wisconsin Patients Compensation Fund, Jess, and Schwochert in connection with a number of DAI policies that he alleges are constitutionally deficient. I will not allow plaintiff to proceed on these claims. Because plaintiff fails to state a claim against any of

12

the individuals who he alleges followed these policies, his allegations do not support a conclusion that he was injured by these policies. In any event, the Eleventh Amendment bars plaintiff from asserting claims against state agencies and bars claims for money damages against state officials in their official capacities. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Finally, to the extent plaintiff seeks injunctive or declaratory relief, such claims were rendered moot when he was released from custody. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

Because I am denying plaintiff leave to proceed on his federal claims, I decline to exercise jurisdiction over his state law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1250-51 (7th Cir. 1994). I will dismiss those claims without prejudice; plaintiff may raise them in state court.

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to proceed without prepayment of the filing fee (Docket No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff must pay the $338.92 balance of the filing fee as he is able. Plaintiff should forward payments to the clerk of court and clearly identify the payments by case name and number.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** with prejudice with respect to plaintiff's federal claims for failure to state a claim upon which relief may be granted and without prejudice with respect to plaintiff's state law claims because the court declines to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1915(g) directs courts to enter a strike when an "action" is dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." Because plaintiff's state law claims are part of the action and the court did not dismiss

those claims for one of the reasons enumerated in § 1915(g), the court will not record a strike against plaintiff under § 1915(g).

Dated in Milwaukee, Wisconsin, this 25th day of June, 2018.

s/Lynn Adelman
Lynn Adelman
United States District Judge